Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5207 | **DATE** | 9/5/2001 |
| **CASE TITLE** | Richard Bohling vs. Pharmacia Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and order. Defendant's motion for summary judgment [32-1] with respect to both counts in Plaintiff's first amended complaint is granted and Plaintiff's motion for summary judgment [29-1] for the same is denied. Accordingly, Plaintiff's first amended complaint is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP - 6 2001 | 40 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | IS | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 SEP -5 PM 4: 47 | 9/5/2001 date mailed notice | |
| DK | courtroom deputy's initials | Date/time received in central Clerk's Office | DK mailing deputy initials | |

| | |
|---|---|
| RICHARD BOHLING ) | |
| ) | |
| Plaintiff, ) | No. 00 C 5207 |
| ) | |
| v. ) | Magistrate Judge Morton Denlow |
| ) | |
| PHARMACIA CORPORATION, ) | |
| a Delaware Corporation, f/k/a ) | |
| MONSANTO COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This case presents the issue of whether a release executed by plaintiff in connection with his severance from his former employer bars him from suing his former employer for breach of contract and promissory estoppel. The answer is yes.

Plaintiff Richard Bohling ("Plaintiff"/ "Bohling") filed a two-count first amended complaint against his former employer, Pharmacia Corporation f/k/a Monsanto Company ("Defendant"/"Monsanto"), arising out of his departure from Monsanto pursuant to a corporate restructuring. Count I alleges breach of contract in violation of a written separation agreement. Count II alleges an alternative claim for promissory estoppel.

The matter comes before this Court on cross-motions for summary judgment on both counts. Plaintiff moves for summary judgment contending Defendant breached the separation agreement because it failed to eliminate his former position and alternatively, if

40

no enforceable contract exists, that he is entitled to judgment as a matter of law on his claim for promissory estoppel.

Defendant moves for summary judgment contending Plaintiff is barred from pursuing his claims because the separation agreement includes a binding release and because the written agreement bars his claim for promissory estoppel. For the reasons set forth in this opinion, summary judgment is granted in favor of the Defendant and against the Plaintiff on both counts.

## I. BACKGROUND FACTS

### A. The Parties

Bohling is a resident of Rochelle, Illinois and is a former employee of Monsanto. (Def. Resp. ¶¶1, 12). Monsanto is a Delaware corporation engaged in the seed production business and is based in St. Louis, Missouri. (Def. Resp. ¶2). Bohling joined Pfizer Genetics in 1978 as the Manager of Production Research and was promoted in 1980 to Manager of Agronomic Services. (Def. Resp. ¶8). In 1982 Pfizer Genetics merged with DeKalb Ag Research and Bohling relocated to DeKalb, Illinois. (Pl. Stat. ¶9). The new company was called DeKalb Pfizer-Genetics and later the company changed names twice. Monsanto acquired Bohling's previous employer, DeKalb Genetic Corporation ("DeKalb"), in November 1998. (Def. Resp. ¶12). Bohling was employed at Monsanto's DeKalb, Illinois facility from the time of Monsanto's acquisition of the DeKalb plant until his termination on November 30, 1999. (Def. Resp. ¶¶ 12 and 19). At the time Monsanto purchased DeKalb,

Bohling was employed as Manager, Agronomic Information, a position he had held since mid-1997. (Def. Resp. ¶11). In addition, Monsanto completed the acquisition of another seed company, Asgrow, in February 1997. (Pl. Resp. ¶12).

## B. Monsanto Restructures Company

After purchasing DeKalb, Monsanto decided to restructure its departments. (Pl. Resp. ¶13). Monsanto's reorganization called for the integration of three companies: Monsanto, DeKalb and Asgrow, as well as the consolidation of the technical and agronomic services group of each company into a single Technology Development Department. (Pl. Resp. ¶14). Various positions were eliminated to achieve integration.(Pl. Resp. ¶15). For those employees whose positions were eliminated, Monsanto offered them a severance package. (Pl. Resp. ¶17).

## C. The Separation Agreement

The Monsanto reorganization contemplated the physical consolidation of the entire Technology Development Department in St. Louis (Pl. Resp. ¶20). Dale Sorenson, Co-Lead in Technology Development during integration of the companies, desired to keep the entire department together. (Pl. Resp. ¶21). Bohling's supervisor, Dale Sorenson ("Sorenson"), informed Bohling in September 1999 that his department was relocating to St. Louis and that Bohling could either relocate to St. Louis or accept a severance package. (Bohling Dep. at p.30). Bohling declined to relocate and chose to accept the severance package. (Def. Ex. 5).

In September 1999 and October 1999, Human Resources Generalist Donna Turner met with Plaintiff. (Def. Resp. ¶19). Turner met with Bohling in September to provide him with basic information regarding the Separation Program. (Turner Aff. ¶10). She met with him in October to provide him with his own individual summary of separation benefits. (Def. Ex. 6 and Turner Aff. ¶15). Severance pay was determined by calculating two weeks salary for every year of service (with a maximum of one year's salary). (Turner Dep. at p.29). Bohling had 21 years of service and received 42 weeks of severance. (Def. Resp. ¶19, Def. Ex. 6).

In November 1999 Bohling received a document entitled DeKalb Genetics Corporation Separation Program dated November 1, 1999 ("Separation Agreement") for his review. (Def. Resp. ¶20). The Separation Agreement was executed by Bohling on December 10, 1999 and returned to Monsanto. (Def. Ex. 5). The Separation Agreement asks Bohling to "carefully review the Agreement and Release below and sign it to indicate your acknowledgment, agreement and acceptance of these terms." (Pl. Ex. 5, p. 1). Bohling read the Separation Agreement and understood its terms. (Bohling Dep. at p. 82). By signing it, Bohling acknowledged he had reasonable time to consider the meaning and effect of the release and had the opportunity to and had been advised to consult an attorney. (Turner Aff. ¶16, Def. Ex. 5, p.1). Bohling chose not to speak with an attorney. (Bohling Dep. at p.82).

4

The Separation Agreement contained a release provision which provided in pertinent part that Bohling:

> release[s], remise[s] and forever discharge[s] DeKalb Genetics Corporation (hereinafter referred to as "DeKalb" and its assigns (collectively hereinafter referred to as "Monsanto") from any and all rights, claims or other causes of action that I [Bohling] may have against them relating to or arising out of my employment and the termination of that employment, including but not limited to...claims for breach of express or implied contract. (Def. Ex. 5, pp. 1-2).

Pursuant to the Separation Agreement, Bohling was paid the following amounts: 1) severance pay in the amount of $75,381.05; 2) accrued vacation pay in the amount of $8,602.84; and 3) educational/financial planning assistance in the amount of $3,000. (Turner Aff. ¶18).

### D. The Reorganization of Monsanto

After Bohling signed the Separation Agreement and left the company, he learned in January or February 2000 that others within his former department at DeKalb had not relocated to St. Louis. (Bohling Dep. at 35, 38). Monsanto decided not to relocate the TIS positions to St. Louis after a directive to company management, during the second week of January 2000, to reduce its operating budgets for the year 2000 by 15%. (Sorenson Aff. ¶¶25-27).

Bohling is currently employed at FarmPage.com in Waterman, Illinois, an internet company which provides agricultural information to farmers. Bohling's position is Director of Agronomy. (Pl. Resp. ¶¶ 26-27).

## II. SUMMARY JUDGMENT STANDARD

The parties bring cross-motions for summary judgment on the issues of whether Plaintiff agreed to a valid, enforceable release when he entered into the Separation Agreement with Monsanto and in the alternative, whether Plaintiff has a claim for promissory estoppel. Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Sinkler v. Midwest Prop Mgmt. Ltd. P'ship*, 209 F.3d 678 (7th Cir. 2000). The party moving for summary judgment has the burden of showing that there is "no genuine issue as to any material fact." Fed. R. Civ P. 56(c). Upon the moving party's establishment of prima facie entitlement to summary judgment, the opposing party must go beyond the pleadings and set forth specific facts showing that a genuine issue for trial exists. Fed. R. Civ. P. 56(e); *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001).

In filing cross-motions for summary judgment, the parties are not waiving a trial on the merits, each party is merely asking the court to grant it judgment without a trial, unless the judge disagrees. *Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230 (7th Cir. 1996). In cross- motions for summary judgment, each movant must individually fulfill the requirements necessary to obtain summary judgment under Rule 56. *United Transportation Union v. Illinois Central R.R.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998). In making its summary

judgment determination, the court will evaluate each motion on the merits, and draw all reasonable inferences in favor of the non-moving party of that motion. *Brownlee v. City of Chicago*, 983 F.Supp. 776, 779 (N.D. Ill. 1997).

### III. ISSUES TO BE DECIDED

The cross-motions for summary judgment raise the question of whether material issues of fact exist regarding the following: 1) whether the Separation Agreement requires Monsanto to eliminate Bohling's position; 2) whether the release language in the Separation Agreement bars Bohling's claim that Monsanto did not eliminate his position; 3) whether the Separation Agreement is ambiguous so as to require parol evidence; and 4) whether promissory estoppel is barred due to the written Separation Agreement between Monsanto and Bohling. The Court will discuss the issues in order.

### IV. THE SEPARATION AGREEMENT DOES NOT REQUIRE MONSANTO TO ELIMINATE BOHLING'S POSITION

Plaintiff's motion for summary judgment with respect to the breach of contract claim is based on the argument that the Separation Agreement includes a material promise to eliminate Plaintiff's job. However, the Separation Agreement on its face does not obligate Monsanto to eliminate Bohling's position. Therefore, there was no breach of contract.

The Separation Agreement states in pertinent part:

I hereby elect to separate from DeKalb under the terms of the Separation Program effective November 30, 1999. I acknowledge that I voluntarily enter into this Agreement and Release of my own free will based only on the terms and conditions set forth in the summary description dated November 1999. (Def. Ex. 5, p.1).

7

Plaintiff's position of Manager, Agronomic Information and his age, 52, are listed among the employees eligible for the program. (Def. Ex. 5, p.6).[1]

The Summary of Separation Benefits provide that Bohling's activities with the company would be terminated on October 29, 1999 and his actual termination date would be November 30, 1999. ( Def. Ex. 6). His pay would continue regularly through his actual termination date and he would receive payment for any of his earned and accrued vacation benefits through that date. (Id). Additionally, the Summary included an estimated severance amount which was to be paid the first week of December. (Id). The terms detailed in the Summary are the same terms referred to in the Separation Agreement.

Although the Agreement states the reason the employees were chosen to participate in the Separation Program; because jobs were being eliminated, this in no way obligated Monsanto to eliminate those jobs. It obligated Monsanto to pay those employees a severance if they chose to participate in the separation program. Bohling chose to participate. In signing the agreement he obligated Monsanto to pay him, which it did. The Separation Agreement did not create an affirmative obligation on Monsanto to actually eliminate or to relocate to St. Louis, Plaintiff's position.

---

[1] The parties agree this position was eliminated and that Bohling was eliminated. Therefore, even if the Separation Agreement required the elimination of his position, the Court holds, in the alternative, that Monsanto did not breach the Separation Agreement because it did eliminate Plaintiff's position as Manager, Agronomic Information. Plaintiff's claim that he was actually in the position of TIS is barred by the parol evidence rule discussed in Section VI, *infra*.

## V. PLAINTIFF IS BARRED FROM PURSUING HIS CLAIMS BECAUSE HE EXECUTED A COMPLETE RELEASE OF DEFENDANT

The release contained in the Separation Agreement bars Bohling from bringing his claim against Monsanto. The release is broad enough to include his claim that Monsanto breached the Agreement because it did not eliminate his position.

In the release, Bohling relinquished any right he may have had to pursue claims related to his employment and the termination of his employment with Monsanto. The release that Bohling signed, provides in pertinent part:

> I acknowledge that I voluntarily enter into this Agreement and Release of my own free will based only on the terms and conditions set forth in the summary description dated November, 1999. In consideration of the payments and benefits described in the summary description, I hereby release, remise, and forever discharge:
>
> A. DEKALB Genetics Corporation (hereinafter referred to as "DEKALB") and its parent corporation, Monsanto Company, its subsidiaries and affiliates and successor and assigns (collectively hereinafter referred to as "Monsanto");
>
> B. All Monsanto directors, officers, employee and agents; and
>
> C. all Monsanto pension, welfare and incentive compensation plans ("Employee Benefit Plans"), their trustees, agents and fiduciaries
>
> *from any and all rights, claims or other causes of action I may have against them relating to or arising out of my employment and the termination of that employment,* including, but not limited to, any claims for alleged age discrimination or other employment discrimination (including any claims under the Age Discrimination in Employment Act of 1967, as amended) that may have arisen up to the date this Agreement and Release is executed, *claims for breach of express or implied contract...* (Def. Ex. 5, p.1) (Emphasis added).

Although neither party disputes the validity of the executed Separation Agreement and their intent to recognize it, Plaintiff contends the Separation Agreement's language does not prohibit his claims. The Plaintiff argues his claim is not prohibited by the Separation Agreement because it does not arise out of his prior employment with Monsanto. Plaintiff alleges the release language "…may have arisen up to the date this Agreement and Release is executed…" only bars claims existing as of the date the document was signed. Plaintiff claims the Separation Agreement was breached when Monsanto failed to eliminate his former position after the Separation Agreement's execution.

In the Separation Agreement, Bohling agreed to "release, remise and forever discharge the Defendant from any claims or other causes of action that he may have against the Defendant arising out of or relating to his employment or termination of employment." (Def. Ex. 5, p.1). Plaintiff's claim that Monsanto did not eliminate Plaintiff's former position relates to Plaintiff's former employment and the termination of his employment; therefore, the specific language of the Separation Agreement prohibits Plaintiff's claim. The portion of the release which states "that may have arisen up to the date this Agreement and Release is executed…" is referring to claims arising out his employment that allege age discrimination or other employment discrimination. This limitation does not apply to the remainder of the release. For this reason, Bohling is barred from bringing his breach of contract claim.

Furthermore, the release prohibited Bohling from bringing any claims for breach of express or implied contract. This is exactly what Bohling seeks to do. The release bars it.

10

# VI. PAROL EVIDENCE IS NOT NECESSARY TO INTERPRET THE SEPARATION AGREEMENT

Plaintiff contends the intent of the parties cannot be ascertained from the contract's language and the Court must look at parol evidence to interpret the Agreement. This Court disagrees. The Separation Agreement is clear and unambiguous on its face and therefore, there is no reason for the Court to resort to parol evidence.

Contract law applies to releases like the one found in the Separation Agreement. *Capocy v. Kirtadze*, 183 F.3d 629, 631 (7th Cir. 1999). "Where no ambiguity exists, construction of the instruments is a matter of law." *Hurd v. Wildman, Harrold, Allen and Dixon*, 707 N.E.2d 609, 613 (Ill. App. Ct. 1999). The law provides that "where a written agreement is clear and explicit, a court must enforce the agreement as written without the assistance of parol evidence or any extrinsic aids." *Id.*

The Plaintiff argues the term "eliminate" is ambiguous in the Agreement and thus the Court must use parol evidence to ascertain the parties' intent. Whether ambiguity exists within a contract is a question of law, which must be decided by the court. *American Nat. Trust v. KY Fried Chicken*, 719 N.E.2d 201, 210 (Ill. App. 1999). The Court must look at the plain language of the contract to determine whether the term "eliminate" is ambiguous. *Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products*, Inc., 212 F.3d 373, 377-378 (7th Cir. 2000). A contract is not ambiguous if a court can glean its meaning from its general language. *American Nat. Trust v. KY Fried Chicken*, 719 N.E.2d at 210. The general language of the Separation Agreement means that after November 30, 1999, Plaintiff

will no longer be employed at Monsanto as the Manager, Agronomic Information. There is no ambiguity.

The Separation Agreement is not ambiguous because the term "eliminate" as used in the contract is only susceptible to one reasonable interpretation. *Tingstol Co. v. Rainbow Sales Inc.*, 218 F.3d 770, 771 (7th Cir. 2000). The Court rejects Plaintiff's argument that the word "eliminate" can also mean "relocate." The plain language of the Separation Agreement makes it unnecessary for the Court to look any further.

It is improper for the Court to consider extrinsic or parol evidence in interpreting the Separation Agreement because "'extrinsic evidence of a prior or contemporaneous agreement is not admissible to alter the terms' of the written contract" that seems to be complete and unambiguous on its face. *Taimoorazy v. Bloomington Anesthesiology Service, Ltd.*, 122 F.Supp.2d 967, 973 (C.D. Ill. 2000), *quoting Commonwealth Eastern Mortgage Co. v. Williams*, 516 N.E.2d 515, 520 (1st Dist. 1987).[2]

---

[2] The Court finds the contract is integrated and expresses the full intent of the parties because the intent of Plaintiff and Defendant by entering into the Separation Agreement release was to address the terms and conditions for Plaintiff's decision to separate from the company for monetary consideration. Plaintiff has not persuaded the Court that the agreement is not integrated with a mere reference to another document. Plaintiff cannot use the reference to the plan of merger between DeKalb and Monsanto as a way to have parol evidence allowed into the case. In *L.S. Heath & Son v. At&T Information Systems*, the Court held a contract may refer to another document and still be integrated so long as it reveals, "what the basic transaction entailed." 9 F.3d 561, 569 (7th Cir. 1993). The parties agreed at oral argument that there was nothing in the Plan of Merger which this Court should review in the context of this case.

## VII. PLAINTIFF'S CLAIM FOR PROMISSORY ESTOPPEL IS BARRED BECAUSE A VALID CONTRACT EXISTS

Plaintiff pled promissory estoppel, in the alternative, alleging that he reasonably relied to his detriment on Defendant's promise to eliminate his job in DeKalb. Plaintiff is prohibited from seeking relief under the doctrine of promissory estoppel because a valid, enforceable contract exists. *Doyle v. Holy Cross Hospital*, 708 N.E.2d 1140, 1148 (Ill. 1999). Although a party may plead a claim for breach of contract and promissory estoppel in the alternative, once it is determined an enforceable contract exists then a party can no longer recover under a promissory estoppel theory. *Id.* The Court has already held the Separation Agreement is a valid, enforceable contract; therefore, the promissory estoppel doctrine is inapplicable. "When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill." *All-Tech Telecom v. Amway Corp.* 174 F.3d 862, 869 (7th Cir. 1999).

## VIII. CONCLUSION

Plaintiff chose to separate from Monsanto under the terms of the Separation Agreement. He received the benefits and is bound by the burdens of that agreement. Monsanto paid him his severance and he agreed to release Monsanto from all claims relating to his employment and termination of employment and all claims for breach of express or implied contract.

The issues in this case have been decided as a matter of law because there is no question of material fact. First, the Separation Agreement does not require Defendant to eliminate Plaintiff's position. Second, the release language in the Separation Agreement bars his claims. Third, parol evidence is not necessary to interpret the Separation Agreement because the language is clear and unambiguous. Lastly, the doctrine of promissory estoppel is not applicable because a valid written agreement exists. For the foregoing reasons, **Defendant's motion for summary judgment with respect to both counts in Plaintiff's first amended complaint is granted and Plaintiff's motion for summary judgment for the same is denied. Accordingly, Plaintiff's first amended complaint is dismissed with prejudice.**

**SO ORDERED THIS 5th DAY OF SEPTEMBER, 2001.**

_____
MORTON DENLOW
United States Magistrate Judge

**Copies mailed to:**

Donald D. Schwartz
Arnold and Kadjan
19 West Jackson Boulevard
Chicago, IL 60604
**Attorney for Plaintiff**

Mark H. Levison
1010 Market Street
Suite 1300
St. Louis, MO 63101

Anthony L. Schumann
Anthony L. Schumann, Ltd.
30 N. LaSalle St.
Suite 3400
Chicago, IL 60602
**Attorneys for the Defendant**

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Richard Bohling

v.

Pharmacia Corporation

**JUDGMENT IN A CIVIL CASE**

Case Number: 00 C 5207

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's motion for summary judgment with respect to both counts in Plaintiff's first amended complaint is granted and Plaintiff's motion for summary judgment for the same is denied. Accordingly, Plaintiff's first amended complaint is dismissed with prejudice.

Michael W. Dobbins, Clerk of Court

Date: 9/5/2001

*Donna Kuempel* (signature)
Donna Kuempel, Deputy Clerk